## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  DMW MARINE, LLC, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bky.  No. 11-13953 ELF |
| | : | |
| ——————————————————— | : | |
| | : | |
| MICHAEL H. KALINER, Trustee | : | |
| of the Estate of DMW Marine, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANTONOPLOS, | : | Adv.  No.  13-0290 |
| | : | |
| Defendant. | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

For sixteen (16) months prior to its May 17, 2010 bankruptcy filing, DMW Marine, LLC

("the Debtor") operated under the auspices of a federal receiver, Michael Antonoplos ("the

Receiver").  The Receiver was appointed by the U.S. District Court for the Eastern District of

Pennsylvania ("the District Court"), in connection with the action, Klein v. Weidner, No. 08-cv-

3798.

Almost two (2) years after the bankruptcy filing, on May 16, 2013, the chapter 7 trustee,

Michael Kaliner ("the Trustee") initiated this adversary proceeding against the Receiver,

asserting claims for:

- negligence;

- breach of fiduciary duty;

- avoidance and recovery of a preferential transfer pursuant to 11 U.S.C. §§547, 550;

- avoidance of a fraudulent transfer pursuant to 11 U.S.C. §§548(a)(1)(A), 548(a)(1)(B), 544(b) and 550.

The Receiver has filed a motion to dismiss this adversary proceeding ("the Motion") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (incorporated by reference by Fed. R. Bankr. P. 7012).[1]

In the Motion, the Receiver does not suggest that conventional "bankruptcy jurisdiction" under 28 U.S.C. §1334 is lacking.  Rather, he argues that the statutory authority for the exercise of this court's jurisdiction is ousted pursuant to the "Barton doctrine."  See Barton v. Barbour, 104 U.S. 126 (1881).  The Barton doctrine generally provides that a party seeking to sue a court-appointed receiver must first obtain leave of the appointing court and that, absent leave of the appointing court, no other court has jurisdiction to hear a suit against the receiver.  E.g., In re Vistacare Group, LLC, 678 F.3d 218, 224-25 (3d Cir. 2012).

The Trustee did not obtain leave of the District Court (the receivership court) before commencing this adversary proceeding.  Nonetheless, he contends that an exception to the Barton doctrine applies and therefore, this court may exercise jurisdiction over this adversary

---

[1]    The Receiver filed an Answer to the Complaint on June 13, 2013.  Under the current pre-trial management order, discovery was scheduled to conclude on March 31, 2014, a joint pretrial statement is due on June 2, 2014 and a final pretrial conference is scheduled for June 12, 2014.  Thus, the Receiver has raised the issue of this court's subject matter jurisdiction relatively late in the pretrial process (and after the Trustee has expended considerable time and effort in promulgating and compelling discovery).  Nevertheless, the Motion must be considered on its merits.  The issue of lack of subject matter jurisdiction may be raised at any time.  See Fed. R. Civ. P. 12(h)(3); Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance").

proceeding.  Alternatively, he argues that the Receiver has waived the right to raise the <u>Barton</u>

doctrine issue.

For the reasons explained below, I find that the Receiver has properly invoked the <u>Barton</u>

doctrine and that no exception to the doctrine applies.  However, due to the unusual

circumstances presented, I will not dismiss this adversary proceeding for lack of jurisdiction.

Rather, I will defer in favor of the District Court, allowing the District Court to make the ultimate

decision regarding the proper disposition of this matter.  To accomplish this, I will submit a

Report and Recommendation to the District Court requesting that it determine whether:

> (1) the reference of this adversary proceeding should be withdrawn from the bankruptcy court so that the adversary proceeding may be litigated in the District Court; or
>
> (2) the Trustee should be authorized to prosecute his claims in the bankruptcy court; or
>
> (3) the bankruptcy court should be directed to grant the Motion and dismiss this adversary proceeding.

Pending receipt of instructions from the District Court, I will place the adversary

proceeding in suspense.


## II.  BACKGROUND

### A.

The Trustee's action against the Receiver emanates from a long, contentious dispute

between the Debtor's principal, Douglas Weidner ("Weidner"), and his former spouse, Deborah

Klein ("Klein").

Weidner and Klein were divorced in California in 1999.  The divorce decree imposed

certain child and spousal support obligations on Weidner, which he failed to pay.  On June 2, 2008, after protracted litigation between the parties, a California state court entered judgment in Klein's favor in the amount of $548,797.07.  Klein transferred the judgment to the Court of Common Pleas, Chester County, Pennsylvania on August 25, 2008.

On August 11, 2008, Klein commenced an action in the District Court against Weidner to avoid and recover certain alleged fraudulent property transfers.  The District Court ruled in Klein's favor, finding that Weidner's transfers of his residence and his ownership interest in the Debtor to himself and his current spouse as tenants by the entireties were fraudulent and that Klein was entitled to punitive damages, among other relief.[2]

Most relevant for present purposes, the District Court also granted Klein two (2) other forms of relief.  First, the District Court "reverse-pierced" the Debtor's corporate veil.  This remedy permitted Klein to treat the Debtor's assets as Weidner's personal assets for purposes of Klein's collection of her judgment against Weidner.  See Klein v. Weidner, 2010 WL 571800, at *7-8.

Second, on January 19, 2010, the District Court entered an order placing the Debtor in receivership and appointing the Receiver.  A modified order entered on February 17, 2010 ("the Receivership Order") replaced the initial order.

The Receivership Order authorized the Receiver to, inter alia:

---

[2]        The District Court issued three (3) decisions.  The first decision, Klein v. Weidner, 2010 WL 27910 (E.D. Pa. Jan. 6, 2010), addressed the transfer of the residence.  The second decision, Klein v. Weidner, 2010 WL 571800 (E.D. Pa. Feb. 17, 2010), concerned the transfer of Weidner's ownership interest in the Debtor.  In the third decision, Klein v. Weidner, 2010 WL 2671450 (E.D. Pa. July 2, 2010), the District Court determined that Klein was entitled to punitive damages.  The Court of Appeals has affirmed the District Court's rulings.  See Klein v. Weidner, 729 F.3d 280 (3d Cir. 2013).

-4-

- "manage, operate and preserve" the Debtor's property, (¶1);

- "take . . . possession" of the Debtor and its rents, income, and profits, (¶2);

- "continue the operations of, development and maintenance" of the Debtor, (¶6);

- "conduct . . . the business [of the Debtor], namely, the operation of [the Debtor]," (¶7);

- "collect and receive all payments, revenues, rents, income and profits" of the Debtor, (¶10)

- **pay "all current and actual operating expenses," taxes and insurance premiums,** (¶11) (emphasis added);

- **"turn over to [Klein] any funds remaining . . . at the end of each month in excess of the amount necessary to pay the . . . costs of operation and maintenance,"** (¶13) (emphasis added);

- receive compensation for his services, "to be negotiated between the Receiver and [Klein]," (¶15).

On the liability side, the Receivership Order provided:

> If the Receiver shall have acted in accordance with the terms and conditions of this Order, the Receiver shall have no liability as to any claim, actions or causes of action of any third parties who have or would have claims against the owner of [the Debtor] or any officer, director or partner thereof, including, without limitation, any claims under any federal or state environmental laws, provided however, **the Receiver shall be liable for:** breach of any contract entered into by Receiver; **the Receiver's own negligence, intentional or willful misconduct; or actions taken by the Receiver that are not authorized by the terms of this Order**; or actions of the Receiver that occur after the date of this Order.

(¶19) (emphasis added).

**B.**

In the Trustee's Complaint in this adversary proceeding, he alleges that, in or around June 2010, the Receiver entered into an agreement ("the Agreement") with Klein that resulted in the Debtor paying her $625,000.00.  The Trustee asserts that the Agreement was "in violation of" the Receivership Order and "against the interests" of the Debtor and its bankruptcy estate. (Complaint ¶16).

More specifically, the Trustee contends that under Paragraph 13 of the Receivership Order, the Receiver could make payments to Klein, on account of the Debtor's reverse veil-piercing liability on Klein's $548,797.07 judgment against Weidner, only from monthly profits remaining after the payment of ongoing operational expenses.  The Trustee complains that the Receiver failed to comply with this alleged restriction by paying Klein from: (a) customer deposits, and (b) cash on hand that the Debtor needed as operating capital.  (Id. ¶¶18, 40).

The Trustee further alleges that the Receiver received "excessive compensation for essentially no work, totaling $206,872.50" from February 2010 through May 2011.  (Id. ¶24). The Trustee contends that the Receiver's faulty conduct caused the Debtor's business problems and eventual bankruptcy filing.  (Id. at ¶23).

According to the Trustee, the Receiver's alleged inadequate performance amounted to negligence and a breach of his fiduciary duty to the Debtor.  (Id. ¶¶42-42, 48).  In addition, the Trustee alleges that $152,947.50 of the asserted excessive compensation constitutes an avoidable preference under 11 U.S.C. §547.  (Id. ¶53-58).  Finally, the Trustee claims that the Receiver's compensation was paid with an intent to hinder, delay, or defraud creditors or was paid for less than reasonably equivalent value in exchange, rendering the payments avoidable as fraudulent

transfers under 11 U.S.C. §§548(a)(1)(A), (B) and 544(b).  (Id. ¶¶60-76).

### III.  THE *BARTON* DOCTRINE

#### A.

The two (2) reported opinions in this jurisdiction that provide the most fulsome

explanation and discussion of the Barton Doctrine are the Court of Appeals' decision, Vistacare

Group and the bankruptcy court's decision, In re CitX Corp., 302 B.R. 144 (Bankr. E.D. Pa.

2003).[3]  The Vistacare Group and CitX courts both thoroughly analyzed the historical roots and

theoretical underpinnings of the Barton Doctrine, so I will not repeat that discussion here.  I

observe that Vistacare Group is a precedential opinion that this court is obliged to follow.  See,

e.g., A.A. ex. rel. E.A. v. Exeter Twp. Sch. Dist., 485 F. Supp. 2d 587, 591 (E.D. Pa. 2007).

The core principles regarding the Barton Doctrine that may be distilled from Vistacare

Group and CitX (and many other reported decisions) are:

- Although it is a common law doctrine, it has not been abrogated by the Bankruptcy Code.[4]

- In the bankruptcy context, it applies to actions that a third party brings against a bankruptcy trustee,[5] as well as actions that a bankruptcy trustee

---

[3]      In Vistacare Group, our Court of Appeals held that the Barton Doctrine is applicable to bankruptcy trustees and therefore, a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity. 678 F.3d at 224.  CitX involved a fact scenario much closer to the case sub judice because, in CitX, the chapter 7 trustee filed an adversary proceeding against a state court receiver.

[4]      Vistacare Group, 678 F.3d at 225, 228.

[5]      Id. at 227-28.

(continued...)

brings against receivers appointed by federal and state courts.[6]

- The doctrine mandates that a plaintiff who wishes to bring an action against the receiver outside of the receivership court must first obtain permission of the receivership court, which should not be granted absent a prima facie showing to the receivership court of the merits of the claim.[7]

- The doctrine implicates the subject matter jurisdiction of the non-receivership court.  If the plaintiff fails to obtain the prior permission of the receivership court, the non-receivership court lacks jurisdiction over the action against the receiver.[8]

- The jurisdictional limitation that is superimposed on the authority of the non-receivership court originally was grounded in "due regard for the receivership court's control over the property"[9] that is subject to the receivership.[10]

---

[5](...continued)

[6]      CitX, 302 B.R. at 156 ("[T]o the extent the trustee's claims in this proceeding seek recovery from receivership property or seek to obtain some control over that property, then federal common law would restrict such relief").

[7]      Vistacare Group, 678 F.3d at 232.

[8]      E.g., In re Kashani, 190 B.R. 875, 884 (B.A.P. 9th Cir. 1995) (citing cases); In re Summit Metals, 477 B.R. 484, 494-95 (Bankr. D. Del. 2012); In re Triple S Restaurants., Inc., 342 B.R. 508, 511-12 (Bankr. W.D. Ky. 2006).

[9]      CitX, 302 B.R. at 152.

[10]      Id.  The Supreme Court in Barton itself explained:

> **If the court below had entertained jurisdiction of this suit, it would have been an attempt on its part to adjust charges and expenses incident to the administration by the court of another jurisdiction of trust property in its possession**, and to enforce the payment of such charges and expenses out of the trust property without the leave of the court which was administering it, and without consideration of the rights and equities of other claimants thereto. **It**

(continued...)

Traditionally, courts have identified two (2) recognized exceptions to the doctrine:

- the "business" exception, codified at 28 U.S.C. §959(a) ("the §959(a) Exception");[11] and

- the "<u>ultra vires</u>" exception.

<u>E.g.</u>, <u>In re Day</u>, 2014 WL 636797, at *23 (Bankr. D.N.J. Feb. 7, 2014) (per Stern, J.); <u>Summit Metals</u>, 477 B.R. at 496.

The Trustee asserts that both of these exceptions apply.  The Trustee also contends that the Receiver has waived his right to assert the <u>Barton</u> doctrine with respect to certain claims. Respectfully, I disagree.

---

[10](...continued)

> **would have been an usurpation of the powers and duties which belonged exclusively to another court**, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities.

<u>Barton</u>, 104 U.S. at 136 (emphasis added).

While the principle is not applicable in the present case because the receivership was a federal, not state court, receivership, the doctrine frequently finds further support based on considerations of federal-state comity.  <u>CitX</u>, 302 B.R. at 149-50 ("Until the administration of the estate has been completed, and the receivership terminated, no court of the one government can, by collateral suit, assume to deal with rights of property or of action constituting part of the estate within the exclusive jurisdiction and control of the courts of the other" (quoting <u>Porter v. Sabin</u>, 149 U.S. 473, 480 (1893))).

[11]    28 U.S.C. §959(a) provides, in pertinent part, that trustees and receivers "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."

**B.**

The §959(a) Exception is a "narrow statutory exception," Satterfield v. Malloy, 700 F.3d 1231, 1237 (10th Cir. 2012), that permits a receiver to be sued in a non-receivership court for his or her actions performed while "carrying on [the] business," 28 U.S.C. §959(a).  However, it applies "only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." In re Crown Vantage, Inc., 421 F.3d 963, 971-72 (9th Cir. 2005); accord Vistacare Group, 678 F.3d at 227.  It is exemplified by "the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store." Carter v. Rodgers, 220 F.3d 1249, 1254 (11th Cir. 2000).  Significantly, for present purposes, the exception is not intended to permit actions against a receiver in a non-receivership forum for alleged misconduct in the administration of receivership property (as opposed to torts committed against parties doing business with the entity in receivership). See Muratore v. Darr, 375 F.3d 140, 146 (1st Cir. 2004); see also In re Cutright, 2012 WL 1945703, at *6 n.9 (Bankr. E.D. Va. May 30, 2012).

After considering the nature of the Trustee's claims against the Receiver, I conclude that the §959(a) Exception is not applicable here.

The causes of action available to a chapter 7 bankruptcy trustee are limited to those that either: (1) belonged to the debtor as of the commencement of the case and passed to the bankruptcy estate under 11 U.S.C. §541, or (2) are created by the Bankruptcy Code. See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 356 (3d Cir. 2001); 3 Collier on Bankruptcy ¶3.23.03[2] (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2012).  The Trustee's negligence and breach of fiduciary claims in this adversary proceeding fall under the

-10-

first category; the preference and fraudulent transfer actions fall under the second category.

Beginning with the Trustee's negligence and breach of fiduciary duty claims, these claims are those of the current representative of the Debtor's estate against the estate's prior representative.  They are similar to claims a bankruptcy trustee might assert on behalf of a corporation against the prior corporate officers and directors for their alleged mismanagement of the entity, see, e.g., Resolution Trust Corp. v. Vanderweele, 833 F. Supp. 1383, 1384-85 (N.D. Ind. 1993); In re Reading Broadcasting Co., 390 B.R. 532, 546 (Bankr. E.D. Pa. 2008), the difference here being only that prior management was a court appointed receiver, rather than the Debtor's officers and directors.

The Trustee does not allege that the Receiver's actions caused direct injury to any third parties.[12]  Rather, the foundation of the Trustee's claims is that the Receiver's alleged misconduct in administering the assets under his control injured the Debtor itself.  Thus, the Trustee is asserting a cause of action that belonged to the Debtor as of the commencement of the bankruptcy case (which is why the Trustee has standing to assert this claim, which does not arise under the Bankruptcy Code).

Viewed from the proper perspective, the Trustee's claims for negligence and breach of fiduciary duty do not stem from the conduct of the Debtor's business in the statutory sense of 28 U.S.C. §959(a), even though the Receiver was authorized to carry on the Debtor's business during the receivership.  Rather, the Trustee's claims are based on alleged misconduct in the

---

[12]      Of course, the Trustee's claim is that the Receiver's actions indirectly injured third parties insofar as he claims that the Receiver left the Debtor unable to pay its creditors in the ordinary course.

Receiver's administration of the Debtor's estate causing injury to the Debtor; not actions alleging injury to third parties that interacted with the Debtor as the Receiver conducted its ordinary business operations.  Therefore, the negligence and breach of fiduciary duty claims fall outside of the §959(a) Exception.  See Fleeger v. Clarkson Co. Ltd., 86 F.R.D. 388, 394-95 (N.D. Tex. 1980); see also Muratore, 375 F.3d at 147 (§959(a) is not intended to create a "generalized tort exception" to the Barton Doctrine).

As for the Bankruptcy Code based claims, they too are grounded in injury to the bankruptcy estate, not injury to third parties arising from the Receiver's conduct of the Debtor's business in the ordinary course.  Consequently, for the same reasons, they fall outside the §959(a) Exception.[13]

---

[13]    I pause here to make another observation regarding the Code-based claims.

One might question whether Bankruptcy Code claims for preference or fraudulent transfers in which the trustee seeks to hold a receiver personally liable (rather than seeking a recovery from receivership property) for transfers to the receiver even should be subject to the Barton Doctrine. At first blush,  a preference claim  in particular, does not appear to interfere unduly with the administration of the receivership or receivership property, at least when the receiver is not entitled to be indemnified from receivership property.  A prima facie valid preference claim does not involve a review of the propriety of the receiver's conduct; it focuses primarily on whether the transfer to the receiver enabled the receiver to receive more than other creditors.  In implementing bankruptcy preference policy, trustees regularly set aside bona fide, valid pre-petition transfers based on the "equality of distribution" policy that underlies bankruptcy preference law.  See generally In re Molded Acoustical Prods., Inc., 18 F.3d 217, 224 (3d Cir. 1994) (referring to the "paramount bankruptcy policy of the equitable treatment of creditors").   In these circumstances, arguably, no purpose is served in requiring the bankruptcy trustee to obtain authority from the receivership court to file a preference action against the receiver in the bankruptcy court.  Nevertheless, for several reasons, I conclude that the concerns underlying the Barton doctrine are applicable to Bankruptcy Code-based transfer avoidance claims against a receiver.

First, transfer avoidance actions have a substantial potential for injecting the bankruptcy court into the administration of the receivership.  This can occur, for example, when the receiver invokes certain affirmative preference defenses (which are routinely asserted), such as those arising under 11 U.S.C. §547(c)(1), (c)(2) and (c)(4).  Similarly, a fraudulent transfer claim under §548 requires that the bankruptcy court evaluate the value of the services provided by the receiver appointed by another court.

(continued...)

**C.**

**1.**

Under the "ultra vires" exception, a receiver loses the protection of the <u>Barton</u> doctrine

for actions that are beyond the scope of his or her duties authorized by the receivership court.

<u>See</u> <u>In re McKenzie</u>, 716 F.3d 404, 415 (6th Cir. 2013); <u>Summit Metals</u>, 477 B.R. at 496.  The

classic application of the "ultra vires" exception is the case of an action against a receiver who

seizes or otherwise attempts to administer property that is not receivership property, but that

actually belongs to a third party.  <u>See, e.g.</u>, <u>Satterfield</u>, 700 F.3d at 1235; <u>Teton Millwork Sales v.</u>

<u>Schlossberg</u>, 311 F. App'x 145, 147-49 (10th Cir. 2009) (nonprecedential); <u>Lurie v. Blackwell</u>,

211 F.3d 1274 (9th Cir. 2000) (nonprecedential) (citing <u>Leonard v. Vrooman</u>, 383 F.2d 556, 560-

61 (9th Cir. 1967)); <u>Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.</u>, 883 F. Supp.

2d 797, 817-18 (E.D. Mo. 2012).

The "ultra vires" exception may be said to be a corollary of the <u>Barton</u> doctrine itself.  As

the <u>Vistacare Group</u> court explained, the core purpose of the doctrine is to prevent interference

---

[13](...continued)
        Second, as discussed in Part III.C.2, <u>infra</u>, the rationale for the <u>Barton</u> doctrine has
expanded beyond the goal of preventing a federal court from interfering with another sovereign court's
control over existing receivership assets into a doctrine that is designed, at least to some degree, to
protect the office of the receiver.  In its expanded form, the doctrine seems equally applicable to
bankruptcy transfer avoidance claims that seek to hold the receiver personally liable.

        Finally, I perceive no substantial bankruptcy policy that requires overriding the <u>Barton</u>
doctrine when a trustee seeks to bring a transfer avoidance action against a receiver-defendant.  The
interference with bankruptcy case administration is relatively minimal.  The doctrine merely requires that
the bankruptcy trustee appear initially in the receivership court and make a threshold demonstration of
merit in order to receive authorization to proceed further against the receiver.  Such a requirement is not
overly burdensome and is consistent with the receiver-protective purposes of the doctrine referred to
above.

-13-

with the receivership court's control over receivership property:

> Because a judgment against the receiver in his capacity as receiver would be
> satisfied out of the receivership property, the effect of a suit brought without leave
> to recover such a judgment would be "to take the property of the trust from [the
> receiver's] hands and apply it to the payment of the plaintiff's claim, without
> regard to the rights of other creditors or the orders of the court which [was]
> administering the trust property.

678 F.3d at 224 (quoting Barton, 104 U.S. at 128-29).  By comparison, if the receiver is not

acting within the scope of his authority, and if receivership property would not be subject to the

resulting claims arising from the receiver's conduct, (the receiver being personally liable), there

is no direct, adverse impact on the receivership estate and, arguably, no reason to apply the

doctrine to restrict the jurisdiction of the non-receivership court.

Logically, then, the Trustee's legal theory  –  that the Receiver is personally liable

because he violated the Receivership Order when he made the $625,000.00 payments to Klein  –

facially appears to fall under the "ultra vires" exception.[14]  However, that result is not supported

by the case law.


**2.**

Over the years, courts have curtailed the scope of "ultra vires" exception to the Barton

Doctrine.  While no court has said as much definitively, it may be no exaggeration to state that

the exception applies only in cases in which a receiver wrongfully seizes or controls non-

---

[14]        Here, I refer only to the Trustee's negligence and breach of fiduciary duty claims.  The
preference and fraudulent transfer appear to be based on the compensation received by the Receiver and
the application of the Bankruptcy Code transfer avoidance provisions rather than a violation of the
Receivership Order. Thus, that component of the Receiver's claim does not appear to fall within the
"ultra vires" exception.

receivership property.  See In re Weisser Eyecare, Inc., 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000)

("Courts which have held trustees personally liable for actions taken outside the scope of their

authority, have mainly done so in matters involving a trustee's mistaken seizure of property not

property of the estate, or other similar actions."); see also Teton Millwork Sales, 311 F. App'x at

147-49 (nonprecedential).

The apparent disfavor with which courts have viewed the "ultra vires" exception seems to

be based on a second rationale for the Barton doctrine that has developed: a common law interest

in protecting trustees and receivers from claims that they are personally liable for their official

actions.  See, e.g., CitX, 302 B.R. at 152 n.8.  There is a judicial perception that if bankruptcy

trustees and receivers are not accorded such protection, it may be more difficult "'to find

competent people to appoint as trustee.'"  CitX, 302 B.R. at 152 n.8 (quoting Matter of Linton,

136 F.3d 544, 545 (7th Cir. 1998)).[15]

Courts also have reasoned that permitting damages actions against receivers "whether

ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the

administration of the estate," Crown Vantage, Inc., 421 F.3d at 971, a result that is perceived to

unduly interfere with the receivership court's control of its own proceedings.  See also Linton,

136 F.3d at 546 ("If debtors, creditors, defendants in adversary proceedings, and other parties to a

bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct

of the proceeding, [the state] court would have the practical power to turn bankruptcy losers into

---

[15]     Many courts have cited Linton approvingly, as authority for the principle stated above in
the text.  See, e.g., Satterfield, 700 F.3d at 1236; McDaniel v. Blust, 668 F.3d 153, 157 (4th Cir. 2012);
Lawrence v. Goldberg, 573 F.3d 1265, 1269 (11th Cir. 2009); Crown Vantage, 421 F.3d at 974; Muratore,
375 F.3d at 147.

bankruptcy winners, and vice versa.").

The Third Circuit in <u>Vistacare Group</u> endorsed much of this reasoning. <u>See</u> 678 F.3d at

228 (quoting <u>Linton</u> and <u>Crown Advantage</u> approvingly and recognizing that litigation against

the trustee in other courts is detrimental to the bankruptcy process regardless whether damage

claims are paid by the estate or the trustee personally).[16]  As a trial court, it is appropriate for the

bankruptcy court to follow <u>Vistacare Group</u> on the issue.[17]

---

[16]    Other policy considerations support limitations on the scope of the "ultra vires"
exception in this case.  The Trustee's legal theory on the merits requires an evaluation of the scope and
meaning of the orders of another court (the receivership court).  Thus, the questions of subject matter
jurisdiction and the merits overlap extensively, if not entirely.  A substantial record may be needed to
determine whether the Receiver had the authority to make the $625,000.00 payments to Klein.  The need
for a substantial record is problematic when a court must make a threshold, jurisdictional decision.
Further, determinations regarding the meaning of its orders and whether the Receiver acted in accordance
with them are ones that the receivership court is far better suited to make.


[17]    I acknowledge that the commentary in <u>Vistacare Group</u> on the "ultra vires" exception
was just that  - commentary.  The issue whether damage actions against a trustee or receiver are subject
to the <u>Barton</u> doctrine for actions alleged to have exceeded his or her authority was not before the Court
of Appeals.

In <u>Vistacare Group</u>, the plaintiff wished to sue a bankruptcy trustee and actually
complied with the <u>Barton</u> doctrine by requesting bankruptcy court authorization to file an action against
the trustee in state court.  The issues on appeal were whether the <u>Barton</u> Doctrine even applied to
bankruptcy trustees and, if so, whether the bankruptcy court abused its discretion in permitting the
plaintiff to proceed in state court. The Court of Appeals held the doctrine does apply and that the
bankruptcy court did not abuse its discretion.

Nothing in the Court of Appeals' opinion suggests that the plaintiff-appellee argued that
the bankruptcy court's ruling also could have been affirmed under the "ultra vires" exception to the
<u>Barton</u> doctrine.  The panel's favorable citation of <u>Linton</u> and <u>Crown Advantage</u> and its discussion of the
negative consequences of permitting damage actions against trustees and receivers were marshaled as
policy reasons supporting its initial holding that the <u>Barton</u> doctrine applies to bankruptcy trustees.

That said, dictum in a decision of the Court of Appeals is entitled to deference and is not
to be disregarded lightly.  <u>See, e.g.</u>, <u>Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.
Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 561 (3d Cir. 2003).  After taking into account the reasoning
in <u>Vistacare Group</u>, as well as what I perceive as the trend in the case law, I consider it more likely than
not that, when faced squarely with the issue, the Court of Appeals will hold that damage actions against a
(continued...)

-16-

**3.**

Under the <u>Linton/Crown Advantage</u> line of cases, all actions for damages against

receivers, with the possible exception of damage actions arising from the wrongful seizure of

non-receivership property,[18] are subject to the <u>Barton</u> doctrine and fall outside the "ultra vires"

exception to the doctrine.[19]   In this case, the Trustee is seeking damages from the Receiver and

his complaints regarding the Receiver's conduct in connection with what may be characterized as

"case administration," not the seizure of non-receivership property.   It follows that the "ultra

vires" exception is inapplicable.

---

[17](...continued)
receiver are subject to the <u>Barton</u> doctrine, even if the damage action is based on the theory that the
receiver exceeded his or her authority, unless the conduct at issue involved the seizure of non-
receivership property.

[18]      <u>See, e.g.</u>, <u>Teton Millwork</u>, 311 F. App'x at 147-49.  <u>Teton Millwork</u> has some striking
similarities to the present case, but also some significant differences.  It arose out of a divorce proceeding
in which the state court appointed a receiver to collect the husband's assets so that they would be
available to satisfy the court's orders.  The receiver then took control of the assets of a corporation in
which the husband held a 25% interest, rather than taking control of the husband's stock in the
corporation.  The 10th Circuit Court of Appeals held that the corporation's lawsuit against the receiver in
a non-receivership court for damages for fraud and abuse of process fell within the "ultra vires"
exception to the <u>Barton</u> doctrine. The decision drew a vigorous dissent from one of the panel judges.  If
the dissent is correct, the "ultra vires" exception is limited to equitable actions (not damage actions)
based on the legal theory that the receiver exceeded his or her authority by seizing non-receivership
property.  In any event, the competing opinions in <u>Teton Millwork</u>, a decision from another Circuit that is
not binding precedent in this court, neatly illustrate the tensions inherent in the "ultra vires" exception to
the <u>Barton</u> doctrine.

[19]      Consistent with this narrow application of the "ultra vires" exception, courts have
rejected the argument that the <u>Barton</u> doctrine does not apply after the receivership has concluded.  <u>E.g.</u>,
<u>Satterfield</u>, 700 F.3d at 1236; <u>Muratore</u>, 375 F.3d at 147.

**D.**

The Trustee's last argument is that the Receiver "has waived any immunity attaching to his actions by virtue of the <u>Barton</u> doctrine."  (Trustee's Response to Motion ¶21).  The Trustee cites <u>CitX</u> in support of this argument.

In <u>CitX</u>, after acknowledging the general principle that a subject matter jurisdictional objection is not waivable, <u>see</u> n.1, <u>supra</u>, the court observed that certain types of jurisdictional arguments are capable of being waived.  The court cited <u>In re Hechinger Inv. Co. of Delaware, Inc.</u>, 335 F.3d 243, 248-49 (3d Cir. 2003), for the proposition that a state may waive its right to challenge the jurisdiction of a federal court pursuant to the Eleventh Amendment to the U.S. Constitution. The court analogized the <u>Barton</u> doctrine's limitation on the exercise of jurisdiction to the jurisdictional limitation imposed by the Eleventh Amendment to the U.S. Constitution. <u>CitX</u>, 302 B.R. at 157-59.  Pointing out that the receiver had participated extensively in the main bankruptcy case (seeking the appointment of a trustee, responding to motions and, most importantly, having filed a proof of claim), the court held that, through his participation in the case, the receiver waived any immunity he had from being sued in the bankruptcy forum.  <u>Id.</u>

I read <u>CitX</u> as suggesting that a receiver's participation in the main bankruptcy case may be so extensive, particularly if he or she files a proof of claim, that the bankruptcy court should conclude that the receiver has submitted to the jurisdiction of the court and that the <u>Barton</u> doctrine should not bar an action against the receiver, at least so long as the plaintiff is not attempting to disturb the receivership court's control over receivership property.  Assuming <u>arguendo</u> that <u>CitX</u> correctly held that a receiver seeking to invoke the <u>Barton</u> doctrine may

waive the right to do so,[20] I conclude, as a matter of law, that no waiver has occurred here.

A review of the main case docket reveals that the Receiver has not participated extensively in the bankruptcy case.  He filed no motions.  He has not filed a proof of claim.  With one (1) minor exception, he also did not participate as a party in interest in any motions filed by other parties.  His participation was limited to

> (1) signing the initial chapter 11 petition, as authorized and directed by Weidner as sole member of the Board of Directors (Bky. No. 11-13953, Doc. # 1), an action which resulted in the termination of the Receiver's control over the receivership assets, see 11 U.S.C. §543(a), (b);

> (2) responding to the motion filed by the Trustee to compel him comply with the court's order directing him to assist the Trustee in preparing the bankruptcy schedules and statement of financial affairs (id., Doc. #'s 74, 77, 84, 96, 97); and

> (3) being examined pursuant to Fed. R. Bankr. P. 2004 (id., Doc. #101).

These are all relatively minor actions, compared to the facts in CitX.  At bottom, the Trustee's waiver argument relies on the Receiver's delay in raising the Barton doctrine issue within this adversary proceeding. This argument fails in the face of Fed. R. Civ. P. 12(h)(3). CitX being factually distinguishable and the Trustee having cited no legal authority supporting the argument that a Barton waiver may be based on nothing more than the delay in raising the jurisdictional issue in the adversary proceeding itself, I conclude that no waiver has occurred.

---

[20]     My research reveals no other reported decisions that discuss the issue.

## IV.  DISPOSITION

Due to the Trustee failure to obtain authority from the receivership court before filing the Complaint against the Receiver I conclude that the <u>Barton</u> doctrine is applicable and that no exceptions to the doctrine apply.   The final issue is the proper disposition of the Motion.

Ordinarily, following a determination that the <u>Barton</u> doctrine bars the exercise of the court's jurisdiction, the court's role is straightforward: grant the Motion and enter an order dismissing the adversary proceeding for lack of jurisdiction.  A non-merits dismissal would not preclude the Trustee from proceeding in the receivership court to obtain permission to reinstitute the action in the bankruptcy court or to assert the claims in the receivership court (assuming, of course that the receivership court has jurisdiction).

There is, however, an "elephant in the room" – the likelihood that the Trustee's claims will be time-barred if this proceeding is dismissed for lack of jurisdiction.[21]  Should that matter?

---

[21]    The Trustee's negligence and breach of fiduciary claims against the Receiver, including the applicable limitations period, likely are governed by state law.  <u>See</u> <u>New Eng. Mut. Life Ins. Co. v. Troy Ventures, Ltd.</u>, 1994 WL 705411, at *10 n.3 (D.N.J. Dec. 14, 1994); <u>see also</u> <u>Fleeger</u>, 86 F.R.D. at 394.  <u>See generally</u> <u>O'Melveny & Myers v. F.D.I.C.</u>, 512 U.S. 79, 83 (1994) (in related context emphasizing that there is no federal general common law).  In a prior proceeding, I found that the Debtor was a Pennsylvania entity.  <u>See</u> <u>In re Weidner</u>, 476 B.R. 873, 878 n.4 (Bankr. E.D. Pa. 2012).

Assuming that Pennsylvania law applies, there is a two (2) year limitations period for damages to property arising from negligence or "otherwise tortious conduct," 42 Pa.C.S. §5524(7), which seemingly would apply to both the negligence and breach of fiduciary duty claims.  The agreement resulting in the transfers being made to Klein, occurred in June 2010.  Putting aside a possible application of the "discovery rule," <u>see, e.g.</u>, <u>O'Kelly v. Dawson</u>, 62 A.3d 414, 420-21 (Pa. Super. Ct. 2013), on its face, the statute of limitations expired in June 2012.  However, pursuant to 11 U.S.C. §108(a), because the limitations period had not expired when the bankruptcy case was filed in May 2011, the Trustee was authorized to file action before "two years after the order for relief."  That two (2) year period expired in May 2013.  Thus, if this adversary proceeding is dismissed, the statute of limitations will have run.  The fact that it was filed timely prior to the expiration of the limitations period would not toll the statute or otherwise save it.  <u>See</u> <u>In re Jewelcor, Inc.</u>, 517 F.3d 672, 675 (3d Cir. 2008) (42 Pa.C.S. §5535(a) does not preserve a time-barred claim in Pennsylvania state court if the claim first was

(continued...)

-20-

Often, the answer might be "no,"[22] but in the circumstances of this case, I conclude that the

District Court should have the opportunity to determine the Trustee's fate.

It is true that by waiting to file this adversary proceeding until close to the expiration of

statutes of limitation, the Trustee undertook some risk that he would lose the right to assert his

claims if he suffered a non-merits dismissal.  But, in this particular case, due to the unique

relationship between the bankruptcy court and the District Court, the punishment would not fit

the crime.

This is not a case in which the plaintiff filed suit in the court of a different "sovereign"

than the receivership court (e.g., suing a state court receiver in either federal court or the court of

a different state; or suing a federal court receiver in state court).  Nor is it a case in which the

plaintiff filed in a court in a different territorial jurisdiction than the receivership court (i.e.,

bringing suit in a federal court in a different district than the federal receivership court).

Here, the Trustee filed suit in a court which is a "unit" of the receivership court.  See 28

U.S.C. §151 ("In each judicial district, the bankruptcy judges in regular active service shall

constitute a unit of the district court").  While the exact nature of the relationship between the

---

[21](...continued)
commenced in federal court).

        As for the bankruptcy transfer avoidance claims, the limitations period also ran in May
2013, two (2) years after the order for relief.  See 11 U.S.C. §546(a)(1).

[22]     See generally McLaughlin v. Arco Polymers, Inc., 721 F.2d 426, 429 (3d Cir. 1983) (28
U.S.C. §1631, which authorizes a federal court lacking jurisdiction to transfer the action to any court in
which the action could have been brought, in the interest of justice, does not provide for a transfer to a
state court).

district court and the bankruptcy court may be characterized as somewhat ambiguous,[23] or at least

dependent on context,[24] in my view, the relationship of the two (2) courts is sufficiently close that

the <u>Barton</u> doctrine concerns are muted when a party files an action in the bankruptcy court

against a receiver appointed by the federal district court of the same district.  Because bankruptcy

---

[23]    The current judicial structure was established by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353, 98 Stat. 333 (1984) in response to the Supreme Court's ruling in <u>N. Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982).  A respected judge (and later commentator) has explained how the bankruptcy court and the district court are simultaneously interconnected and separate as follows:

> [T]he intention of Congress was to create a nexus of jurisdiction between District Judges and Bankruptcy Judges with respect to the division of the jurisdictional grant only, but not to impose a nexus of organization or structure to the Bankruptcy Court "unit" . . . . The ultimate decision was to confer on the District Court a clear constitutional authority to exercise and supervise the exercise of bankruptcy jurisdiction through the structure of personnel of the non-Article III Bankruptcy Court. **The Act of 1984 accomplished this without altering the separation and independence of the Bankruptcy Court, while at the same time conscripting Bankruptcy Judges to perform the judicial work relevant to the District Court grant of bankruptcy jurisdiction**.

<u>In re English</u>, 59 B.R. 460, 461 n.1 (Bankr. N.D. Ga. 1985) (per Norton, J.) (emphasis added).

    One court has characterized the bankruptcy court as "an adjunct of the district court." <u>In re Carpet Corp. of Pan. City Beach</u>, 902 F.2d 883, 890 (11th Cir. 1985); another has gone so far as describing the bankruptcy court as "essentially a master in chancery to assist the district court in reorganizations." <u>In re Craig's Stores of Tex., Inc.</u>, 247 B.R. 652, 654 (S.D. Tex. 2000).  On the other hand, in a recent decision in another adversary proceeding in this bankruptcy case, arising in the context of applying the doctrine of claim preclusion, this court emphasized the distinct jurisdictional prerogative of the bankruptcy court after the district has made a referral.  <u>See In re DMW Marine, LLC</u>, Adv. No. 13-0291 (Doc. #71) (Order dated March 10, 2014).

[24]    For example, the Third Circuit has held that although the bankruptcy court falls outside the general definition of a "court of the United States" set forth in 28 U.S.C. §451, the bankruptcy court may exercise the district court's sanction power under 11 U.S.C. §1927 based on its status as "a unit of the district court" and through the district court's power of referral under 28 U.S.C. §157(a).  <u>See In re Schaefer Salt Recovery, Inc.</u>, 542 F.3d 90, 105 (3d Cir. 2008); <u>see generally In re Reuter</u>, 499 B.R. 655 (Bankr. W.D. Mo. 2013) (collecting cases that are divided on the issue).

jurisdiction derives from a referral of the district court's bankruptcy jurisdiction[25] and is subject to being withdrawn by the same district court that is the receivership court here,[26] and in the context of an action filed in the wrong unit of the district court, when there are substantial concerns that a non-merits dismissal will bar the plaintiff from further pursuing claims against the receiver, I find it appropriate to provide the District Court with the opportunity to determine the ultimate disposition of the matter.

Accordingly, rather than dismiss this adversary proceeding, I will enter a Report and Recommendation[27] in which I request that the district court determine whether it will either:

> (1) withdraw the reference of this adversary proceeding (in which case, the adversary proceeding will be before the receivership court, a court that may also exercise bankruptcy jurisdiction under 28 U.S.C. §1334(b));

> (2) authorize the Trustee to proceed before the bankruptcy court in this adversary proceeding (in which case, I will enter an order denying the Receiver's Motion);[28] or

---

[25]    See 28 U.S.C. §1334(a) ("the district court shall have original and exclusive jurisdiction of all cases under title 11"); 28 U.S.C. §1334(b) ("the district courts shall have original, but not exclusive jurisdiction" of civil proceedings arising under arising in or related to cases under title 11). See also 28 U.S.C. §157(a) (each district court may provide for the referral of cases under title 11 or proceedings arising under, arising in or related to cases under title 11 to the bankruptcy court).

[26]    See 28 U.S.C. §157(d).

[27]    A bankruptcy court has the authority to issue sua sponte a report and recommendation relating to the exercise of jurisdiction of matters that the district court has referred to the bankruptcy court. See Wolinsky v. Oak Tree Imaging, LP, 362 B.R. 770 (S.D. Tex. 2007); In re G. Weeks  Sec., Inc., 89 B.R. 697, 712-13 (Bankr. W.D. Tenn. 1988).

[28]    Arguably, both of the first two (2) potential District Court dispositions are inconsistent with Summit Metals, in which the court held that the removal of an action to the receivership court or obtaining leave of the receivership court after suit in the non-receivership court cannot cure an initial "errant filing."  477 B.R. at 497.  However, in my view, while there should be a presumption that a

(continued...)

-23-

(3) decline to either withdraw the reference or authorize the Trustee to
proceed before the bankruptcy court (which, presumably would require
that the bankruptcy court enter an order granting the Receiver's Motion
and dismissing this adversary proceeding for lack of jurisdiction).

In addition, I will enter an order placing this adversary proceeding in suspense pending

further order of the District Court.

An order and a report and recommendation consistent with this Memorandum will be

entered.

Date: **April 22, 2014**

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

---

[28](...continued)
violation of the Barton doctrine should result in dismissal rather than retention of jurisdiction pending a
determination whether the receivership court will authorize the filing of the lawsuit in the non-
receivership forum, that should not be an inflexible rule.  There may be unusual situations, such as exist
in the present case, in which it is fair and sensible to deviate from the general rule.

    I also note that by issuing a Report and Recommendation, I am granting less relief than
may be available under 28 U.S.C. §1631.  As stated earlier, see n.22, supra, §1631 authorizes the district
court, in its discretion and in the interest of justice to transfer an action to another federal court with the
action then "proceed[ing] as if it had been filed in or noticed for the court to which it is transferred on the
date upon which it was actually filed in or noticed for the court from which it is transferred."  While
§1631 does not expressly authorize bankruptcy courts to transfer cases, see 11 U.S.C. §610, under the
logic of Schaefer Salt Recovery, the bankruptcy court may possess that authority in its capacity as a unit
of the district court.  See In re Seven Fields Dev. Corp., 505 F.3d 237, 247 n.8 (3d Cir. 2007) (dictum);
see generally In re Grocott, 2014 WL 1034410 (E.D. Pa. Mar. 17, 2014) (noting the issue).